UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

United States of America,

                Plaintiff,

    vs.                          REPORT AND RECOMMENDATION

Seth Tylibe Nururdin,

                Defendant.        Crim. No.  06-148(06)(JMR/RLE)

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Motions of the Defendant Seth Tylibe Nururdin ("Nururdin"):

    1.    Nururdin's Motion to Suppress Evidence Obtained from Search and Seizure.

    2.    Nururdin's Motion to Suppress Eyewitness Identification.

A Hearing on the Motions was conducted on July 17, 2006, at which time, Nururdin appeared personally, and by Paul D. Schneck, Esq.; and the Government appeared by Joseph T. Dixon III, Assistant United States Attorney.[1]

For reasons which follow, we recommend that Nururdin's Motions be denied.

## II.  Factual Background

Nururdin has been charged, in a Superseding Indictment, with one Count of conspiring to distribute approximately five hundred (500) grams or more of a mixture of  substance containing a detectable amount of cocaine base, in violation of Title 21 U.S.C. §§841(a)(1), (b)(1)(A), and 846.  The events which give rise to that charge are alleged to have taken place during the time period from September of 2005, through May of  2006.  As pertinent to the charges, and to the Motions now before us, the operative facts may be briefly summarized.[2]

---

[1]At the close of the Hearing, the parties requested leave to submit post-Hearing memoranda on the legal issues raised by the Defendants' Motions.  Leave was granted, and the last brief on the issues was received on July 28, 2006, at which time, the Motions were taken under advisement.  See, Title 18 U.S.C. §3161(h)(1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 767-77 (8th Cir. 1995).

[2]Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are

(continued...)

At the Suppression Hearing, Rodney Wilson ("Wilson"), who is an investigator with the Duluth Police Department, and the Lake Superior Drug and Gang Task Force, and Nick Lukovsky ("Lukovsky"), who is an investigator with the Duluth Police Department, and who is assigned to the Lake Superior Drug and Gang Task Force, testified at the instance of the Government.[3]

Lukovsky testified that Nururdin had been the subject of an ongoing narcotics investigation, and that Lukovsky had arranged, and personally observed, two (2) controlled purchases of crack cocaine from Nururdin by Confidential Informants ("CIs").  The first controlled purchase occurred on March 10, 2006, at which time, Lukovsky observed the CI enter a vehicle with Nururdin, and emerge afterwards with

---

[2](...continued)
preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, <u>United States v. Moore</u>, 936 F.2d 287, 288-89 (6th Cir. 1991); <u>United States v. Prieto-Villa</u>, 910 F.2d 601, 610 (9th Cir. 1990).


[3]At the Hearing, the Court also heard testimony from Matthew McShane ("McShane"), who is an officer with the Duluth Police Department, and Ann Clancey ("Clancey"),  who is an investigator with the Duluth Police Department, in connection with the suppression Motions of Nururdin's co-Defendant, Derrick Lamont Brown ("Brown"), who also testified at the Hearing.  Brown has subsequently withdrawn his suppression Motions, see <u>Docket No. 148</u>, and, as the testimony of McShane, Clancey, and Brown, are not relevant to Nururdin's Motions, we do not recount their testimony here.

narcotics. The transaction was recorded on videotape, and an audio recorder, with the consent of the CI. Lukovsky testified that a second controlled purchase was conducted with the same CI on March 13, 2006. In both instances, the actual exchange of narcotics, and money, was not observed by law enforcement.

Immediately after each of the controlled purchases, Lukovsky showed a black and white photograph of Nururdin -- which law enforcement had acquired either from previous arrest photos, or from the Department of Motor Vehicles -- to the CI. Wilson testified that the photograph that was employed in the investigation was provided by Ann Clancey ("Clancey"), who is an officer with the Duluth Police Department, and who is assigned to the Lake Superior Drug and Gang Task Force, and that she had obtained the photo as part of the investigation. Lukovsky asked the CI if the person depicted in the photograph was the same person who had participated in the controlled purchase. The only photograph shown to the CI was of Nururdin. The informant stated that the person depicted in the photograph provided the narcotics in the controlled sale, and the informant identified the person by his nicknames of "P," and "Cheeseburger." The photograph has not been provided to the Court.

On May 11, 2006, a third controlled purchase of narcotics was arranged by law enforcement through a CI. After the transaction was completed, Lukovsky and

several other officers approached Nururdin in order to arrest him. Nururdin attempted to flee on foot, and was pursued by the officers. Lukovsky testified that other officers observed the Defendant discard various items, while he was pursued by law enforcement, which later proved to be a cell phone, as well as the pre-marked currency that had been used in the controlled buy. Lukovsky stated that he saw officers retrieve the money from the ground, and saw the cell phone in the officers' possession. Nururdin was eventually tackled and arrested by law enforcement. The photograph of Nururdin was shown to the informant immediately following Nururdin's arrest, and the informant positively identified the Defendant as the person who had sold her the narcotics.

After Nururdin's arrest, Lukovsky drafted an Application for a Warrant, and a Supporting Affidavit for a search of Nururdin's person, as well as a residence in Duluth, Minnesota. See, Government Exh. 1. He substantially based his Application on information observed at the controlled purchases, as well as information provided by the CIs. He testified that he brought the documents to a Minnesota District Judge, and witnessed the Judge sign the Search Warrant in his presence. Lukovsky testified that he believed that he had probable cause, and proper authority, to search the

premises identified in the Warrant.   The Search Warrant was executed on May 11, 2006.

### III.  Discussion

A.     Nururdin's  Motion to Suppress Evidence Obtained From Search and Seizure

Nururdin argues that his arrest lacked probable cause, and accordingly,  that the items he allegedly discarded, while being pursued by law enforcement, should be suppressed.  He additionally contends that the information, which was contained in the Search Warrant Affidavit, did not support a fair probability that incriminating evidence would be found at the residence which was subsequently searched.  We disagree with both contentions, and address each, in turn.

1.     Evidence Obtained During Nururdin's Arrest.   "Determining probable cause to arrest requires the court to focus on the moment the arrest was made and to ask whether 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'"  United States v. Taylor, 106 F.3d 801, 803 (8th Cir. 1997), quoting Beck v. Ohio, 379 U.S. 89, 91 (1964); see also, Kiser v. Huron, 219 F.3d 814, 816 (8th Cir. 2000)("Furthermore, '[a]n officer has probable cause to make a warrantless arrest

when facts known to the officer are sufficient to make a reasonably prudent officer believe that the suspect is committing or has committed an offense.'"), quoting Olinger v. Larson, 134 F.3d 1362, 1366 (8th Cir. 1998); Tokar v. Bowersox, 198 F.3d 1039, 1046-47 (8th Cir. 1999)("The existence of probable cause in fact to make a warrantless arrest depends upon whether, at the moment the arrest was made, the facts and circumstances within the arresting officers' knowledge, and of which they had reasonably trustworthy information, were sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense.").

We recognize, and accept, that an officer engaged in an arrest need not personally have found probable cause in order to lawfully effect the arrest. As the Court explained, in United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir. 2001), cert. denied, 534 U.S. 982 (2001):

> Where officers work together on an investigation, we have used the so-called "collective knowledge" theory, United States v. Gonzales, 220 F.3d 922, 925 (8th Cir. 2000), to impute the knowledge of one officer to other officers to uphold an otherwise invalid search or seizure. Under this rationale, the validity of a search "may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if * * * some degree of communication exists between them," id. See also United States v. Morales, 238 F.3d 952, 953 (8th Cir. 2001), and United States v. Twiss, 127 F.3d 771, 774 (8th Cir. 1997). The requirement that there be a degree of communication

- 7 -

> serves to distinguish between officers functioning as a
> "search team," United States v. O'Connell, 841 F.2d 1408,
> 1419 (8th Cir. 1988), cert. denied, 487 U.S. 1210, 108 S.Ct.
> 2857, 101 L.Ed.2d 893 (1988), 488 U.S. 1011, 109 S.Ct.
> 799, 102 L.Ed.2d 790 (1989), and officers acting as
> independent actors who merely happen to be investigating
> the same subject.

"'The determination of whether probable cause exists must not rest on isolated facts;

rather it depends on the cumulative effect of the facts in the totality of

circumstances.'" Tokar v. Bowersox, supra at 1047, quoting United States v.

Everroad, 704 F.2d 403, 406 (8th Cir. 1983). We keep in mind, however, that

"[p]robable cause does not require a prima facie showing of criminal activity, but only

the probability of criminal activity." Id.

Here, we note that Lukovsky, as well as other law enforcement officers,

undertook a series of controlled purchases from Nururdin, which were personally and

electronically monitored. Nururdin argues that, because law enforcement did not

observe the actual hand-off of narcotics to the informant on each occasion, probable

cause was lacking to support his warrantless arrest.

We find the circumstances here to be similar to those in United States v. Rivera,

370 F.3d 730, 733 (8th Cir. 2004). In Rivera, the defendant challenged the existence

of probable cause for his warrantless arrest. There, the defendant was observed

driving a vehicle previously used in two (2) controlled narcotics purchases, and made a third controlled purchase from an undercover police officer. After the final transaction, law enforcement converged on the defendant, in order to place him under arrest. Upon observing the oncoming officers, the defendant "suspiciously departed from his location, heading away from the police." Id.

Our Court of Appeals noted that:

> Based upon these facts, a reasonably prudent person could conclude that [the defendant] was a participant in the methamphetamine sale. His actions and behavior, although perhaps seemingly innocuous to the general public, were reasonably suspicious to officers trained to recognize behaviors consistent with those of a lookout for a drug deal. As such, we find there was probable cause for [the defendant's] arrest.

Id.

Here, law enforcement repeatedly observed Nururdin meet with the informants, in order to conduct controlled purchases of narcotics. The informants returned with a quantity of crack cocaine after the meetings and, on each occasion, the informant identified Nururdin as the source of the narcotics. Upon the completion of the third controlled purchase, and after observing the presence of police officers, Nururdin abruptly attempted to flee the scene, but his attempt was thwarted by the arresting

officers.   On these facts alone, we find probable cause to support Nururdin's warrantless arrest.

Furthermore, we recognize that, in arresting Nururdin, law enforcement relied upon information obtained from interviews with informants.   When reliance on an informant occurs, "'a key issue is whether that information is reliable.'"  United States v. Koons, 300 F.3d 985, 993 (8th Cir. 2002), quoting United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998); see also, United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)("[T]he informant's reliability, veracity, and basis of knowledge are relevant considerations -- but not independent, essential elements -- in finding probable cause.").  As our Court of Appeals has stated:

> In [Illinois v.] Gates, the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." * * * 462 U.S. at 233, 103 S.Ct. at 2329.

United States v. Olson, 21 F.3d 847, 850 (8th Cir. 1995).

As a result, "'an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination.'"  Id., citing United States v. Anderson, 933 F.2d 612, 615 (8th Cir. 1991).

As a consequence, the "core question" is whether the information, which was provided by the informant, was reliable.  See, United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable."). Moreover, "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause."  United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998), cert. denied, 525 U.S. 919 (1998).  In turn, an informant is deemed reliable when his statements are corroborated by independent evidence.  See, United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003) ("[C]orroboration of minor, innocent details may support finding of probable cause."), citing United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001); see also, United States v. Koons, supra at 993 ("'Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.'"), quoting United States v. Fulgham, supra at 401; United States v. Formaro, 152 F.3d 768, 770 (8th Cir. 1998) ("[C]orroboration of the confidential informant's information by independent investigation is an important factor in the calculus of probable cause.").

Here, we have no difficulty in concluding that the confidential informants were reliable, as their reliability was demonstrated by past track records, by the independent observations of the officers during the controlled buys, and by corroboration of the information provided by those informants -- as supplemented by the personal observations of Lukovsky. See, United States v. Rivera, 410 F.3d 998, 1002 (8th Cir. 2005)(informant's credibility was established where his representations were corroborated by officer surveillance and the recovery of narcotics from the informant following a controlled drug transaction). Accordingly, we find that law enforcement had probable cause to arrest Nururdin, and we recommend that any items, which he may have discarded while being pursued by law enforcement, should not be suppressed at Trial.

2.      Evidence Obtained Pursuant to a Search Warrant. Nururdin's Motion also seeks a close review of the Warrant issued for a search of his residence, based upon the four corners of that Warrant and its supporting papers.

a.      The Search Warrant, Supporting Affidavit, and Receipt. On May 11, 2006, a Search Warrant was executed at Nururdin's residence, in Duluth,

Minnesota.  The Warrant was issued by a Minnesota State Court,[4] and it authorized a search for controlled substances; paraphernalia for packaging, weighing, and distributing controlled substances; papers relating to the storage, transportation, ordering, purchase, and distribution of controlled substances; papers and other items reflecting names, addresses, and telephone numbers; video and audio tapes of alleged co-conspirators, assets, and controlled substances; documents evidencing the concealment and expenditures of funds; currency; indicia of occupancy, residency, or payment of utilities and rent; photographs; and permission to monitor and tape record all incoming phone calls during the execution of the Warrant at the Defendant's residence.

In support of the Search Warrant, Lukovsky submitted an Affidavit in which he averred that he believed that information supplied to him by other members of the Lake Superior Drug and Gang Task Force, from police reports and information supplied by other law enforcement officers, to be reliable, and that from past

---

[4]At the time of the Hearing, there was some confusion as to which State District Court Judge had issued the Warrant in question.  The Warrant, and its related papers, disclosed a signature which was difficult to discern.  Lukovsky testified to his belief that the Warrant was issued by Judge Mark Munger but, subsequently, the Government advised that Judge James D. Gibbs, a retired State Court Judge, who was utilizing Judge Munger's Chambers, had actually signed the Warrant.  As Nururdin has not further addressed the identity of the issuing State District Judge, neither do we.

experience, Lukovsky learned that persons involved in drug trafficking often kept detailed writings concerning their activities.  He further averred that purchasers of narcotics would often come to the residence of drug traffickers, based on telephone conversations with officers engaged in the search, during the execution of the Search Warrant.

Lukovsky noted that a CI informed him that Nururdin stays in the area of the residence described in the Search Warrant, and that the CI believed that Nururdin stored crack cocaine and currency proceeds, which resulted from the drug sales, at that residence.[5]   Lukovsky averred that Wilson interviewed "a known person whishing [sic] to remain anonymous" who stated that Nururdin resides near the residence described in the Warrant, and that Nururdin used that residence as a "stash house," and that "large amounts of U.S. currency and crack cocaine" had been observed there. Government Exh. 1, at p. 3.

A second CI informed Lukovsky that Nururdin had been observed selling crack cocaine on at least three (3) occasions within the last two (2) months, and stays at the residence described in the Search Warrant.   A third CI spoke with Lukovsky and

_____

[5]At the Hearing, Lukovsky testified that the residence described in the Search Warrant, and supporting papers, was occupied by the Defendant's girlfriend, and that the Defendant would often reside there as well.

stated that Nururdin had conducted at least ten (10) sales of crack cocaine from the residence described in the Search Warrant, and at least twenty (20) sales in other locations in the Duluth area.

All three of the CIs had provided reliable information in the past that had been corroborated through independent law enforcement investigations, a check of police records, information obtained from other CIs, as well as Lukovsky's personal knowledge. The CIs had conducted numerous narcotics purchases, and were involved in several narcotic investigations.

Lukovsky also recounted the events leading to Nururdin's arrest on May 11, 2006, and noted that law enforcement observed Nururdin leave that residence, and proceed to the controlled purchase of crack cocaine, where he was found in possession of $200.00 of pre-recorded buy money.

The Receipt associated with the Search Warrant, which is dated May 11, 2006, notes that a number of materials were seized from Nururdin's residence. The materials primarily consisted of material suspected to be crack cocaine, a digital scale, two (2) prescription bottles, miscellaneous documents and receipts, two "phone charges," and a cell phone. Receipt, <u>Government Exh. 1</u>.

      b.    <u>Probable Cause</u>.

1)     <u>Standard of Review</u>.  In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband.  <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); <u>United States v. Johnson</u>, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996).  In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place.  <u>United States v. Gladney</u>, 48 F.3d 309, 313 (8th Cir. 1995); <u>United States v. Tagbering</u>, 985 F.2d 946, 949 (8th Cir. 1993).  For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules."  <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983); see also, <u>Ornelas v. United States</u>, supra at 695.

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'"  <u>United States v. Ryan</u>, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting <u>United States v. Goodman</u>, 165 F.3d 610, 613

(8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999).   In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis.  United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); Technical Ordnance, Inc. v. United States, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002).  Moreover, the reviewing Court must not engage in a de novo review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant.  United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991).  This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to Warrants. Illinois v. Gates, supra at 236.

   2) Legal Analysis.  On the showings contained in Lukovsky's Affidavit, we find adequate probable cause for the issuance of the Search Warrant for Nururdin's residence.  Some of the information, which is contained in the Affidavit, was supplied by CIs and, as previously noted, we have no difficulty in concluding that the CIs were reliable, as their reliability was demonstrated by past track records, by the independent observations of the officers during the controlled buys, and by

corroboration of information provided by those informants -- as supplemented by the personal observations of Lukovsky.  See, United States v. Rivera, 410 F.3d at 1002. Moreover, based upon the information contained in Lukovsky's Affidavit, at least one CI has observed ten (10) narcotics transactions occur at that residence.  Based on the foregoing, we find a sufficient nexus between that residence and Nururdin's alleged drug trafficking.

In addition, we do not find the absence of evidence, that any controlled buy occurred in the residence to be searched, as a proper basis for invalidating that Search Warrant.  As our Court of Appeals observed, in United States v. Hulett, 22 F.3d 779, 780 (8th Cir. 1994), "[f]ew places are more convenient tha[n] one's residence for use in planning criminal activity and concealing fruit of a crime."  See also, United States v. Etheridge, 168 F.3d 495, 1998 WL 792467 at **1 (8th Cir., November 18, 1998) ("Since it is well known that drug traffickers routine keep packaging equipment, ledgers, and other incriminating items in their living quarters, the affidavit provided sufficient reason to believe that [the defendant's] residence would contain evidence of criminal activity."); United States v. Formaro, 152 F.3d 768, 770 n. 2 (8th Cir. 1998); United States v. Premises Known as 6040 Wentworth Ave. South Mpls., 1996

WL 260745 at * 4 (D. Minn. 1996), aff'd, 123 F.3d 685 (8th Cir. 1997); United States v. Luloff, 15 F.3d 763,768 (8th Cir. 1994).

Here, Lukovsky's averments, as contained in the opening  paragraphs of his Affidavit, that drug traffickers keep detailed writings, packaging materials, and weighing devices, corroborate the nexus between a drug dealer's residence, and his illegal drug activities, particularly when coupled with the observations of the informants that drug transactions occurred at that residence.   As a result, we are satisfied that the averments of Lukovsky, as coupled with the recognition, in this Circuit, that persons engaged in drug trafficking routinely maintain evidence of their criminal activity in their residences, establishes the requisite nexus between the Defendant's residence, and the likely presence of illegal drugs, or of other evidence of illicit drug activity.  See United States v. Williams, 737 F.2d 735, 738 (8th Cir. 1984)(a probable cause finding that defendant was in possession of methamphetamine was sufficient to justify a search suspect's house and automobile, which the Court determined "were two logical places to look for methamphetamine").

Accordingly, we concur in the determination of the issuing Judicial Officer, that probable cause was present to believe that evidence related to the distribution of controlled substances was being concealed within Nururdin's residence.  See, United

- 19 -

States v. Smith, 266 F.3d 902, 905 (8th Cir. 2001)(finding that an Affidavit which detailed an officer's surveillance of controlled drug transactions provided probable cause to support a Search Warrant).

           c.      Staleness of the Supporting Information.

      "It is axiomatic that probable cause must exist at the time of the search and not merely at sometime earlier."  United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005); see, United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir. 1995). Therefore, a lapse of time, between the observations of a witness and the issuance of a Search Warrant, like a delay in executing a Search Warrant, "may make probable cause fatally stale."  United States v. Maxim, supra at 397 [quotations omitted].

      "There is no bright-line test for determining when information is stale," and the passage of time, alone, is "not always the controlling factor," as other factors, such as "the nature of the criminal activity involved and the kind of property subject to the search," are also relevant to the inquiry.  Id., quoting United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993); United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992); see also, United States v. Kennedy, supra at 1141; United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002).  As but one example, when the Affidavit alleges an "ongoing continuous criminal enterprise, the passage of time between the receipt

of information and the search becomes less critical in assessing probable cause." United States v. Rugh, supra at 754. Therefore, in our analysis, we must not "simply count[] the number of days between the occurrence of the facts supplied and the issuance of the affidavit," but must consider any passage of time "in the context of a specific case and the nature of the crime under investigation." United States v. Maxim, supra at 397, quoting United States v. Koelling, supra at 822. Furthermore, "'where recent information corroborates otherwise stale information, probable cause may be found.'" United States v. Ozar, supra at 1446, quoting United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990), cert. denied, 498 U.S. 1031 (1991).

Here, we find that the information contained in the Search Warrant, regarding the events of the preceding months which culminated in Nururdin's arrest, had not become impermissibly stale by the time the Search Warrant was issued, and executed. Not only did that information relate to an ongoing narcotics investigation, but it had been "freshened" with more current information, which had occurred within the previous week, including the events leading up to, and surrounding, Nururdin's arrest, on the same date as the application for, and the issuance of, the Search Warrant. See, United States v. Ozar, supra at 1446 ("'[W]here recent information corroborates otherwise stale information, probable cause may be found.'"), quoting United States

v. Macklin, supra at 1326; see also, United States v. Morrow, 2004 WL 385278 at *1 (8th Cir., March 2, 2004)("The seven-day delay did not render stale the information on which the Warrant was based."), citing United States v. Gibson, 123 F.3d 1121, 1124-25 (8th Cir. 1997)(four-day delay did not render the Warrant stale where drug activity was ongoing).[6]   Accordingly, we find no basis to sustain a substantive challenge to the Warrant at issue, Nururdin draws no other fatal defects to our attention, and our independent review has failed to disclose any.   Therefore, we recommend that the Nururdin's Motion to Suppress the evidence found at the residence described in the Search Warrant be denied.

B.   The Defendant's Motion to Suppress Eyewitness Identification.

1.   Standard of Review.   Generally speaking, in cases in which the identity of the accused is at issue, the accused may move, under the Due Process Clause,[7] to

_____

[6]Even if the information in the Search Warrant was impermissibly stale, we would be compelled, by the law of this Circuit, to find that the agents' reliance upon the Search Warrant was reasonable, because it "was not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon."   United States v. McNeil, 184 F.3d 770, 775 (8th Cir. 1999)(applying Leon good faith exception to arguably stale Search Warrant), citing United States v. Leon, 468 U.S. 897, 922-23 (1984).

[7]We recognize that, once a Defendant's Sixth Amendment right to counsel has attached, grounds may then exist for a successful challenge to the admissibility of a lineup identification which was conducted in the absence of counsel.   See, United States v. Wade, 388 U.S. 218 (1967).   However, the Supreme Court long ago declared
(continued...)

suppress an out-of-Court identification that was secured by law enforcement officials through improper means.  See, <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972).  Moreover, the Due Process challenge will extend to an anticipated in-Court identification if it was tainted by the erroneous out-of-Court procedures.  See, <u>Foster v. California</u>, 394 U.S. 440, 443-44 (1969); <u>United States v. Tucker</u>, 169 F.3d 1115, 1117-18 (8th Cir. 1999); <u>Williams v. Lockhart</u>, 736 F.2d 1264, 1266 (8th Cir. 1984).

Where, as here, an out-of-Court identification, through the use of an accused's photograph, is at issue, our Court of Appeals uses a two-step admissibility analysis first adopted by the Supreme Court in <u>Manson v. Brathwaite</u>, 432 U.S. 98, 116 (1977).  See,; <u>United States v. Gipson</u>, 383 F.3d 689, 698 (8th Cir. 2004); <u>United States v. Johnson</u>, 56 F.3d 947, 953 (8th Cir. 1995).  First, the Court must determine whether the challenged photographic identification procedure was "impermissibly suggestive." <u>United States v. Gipson</u>, supra at 698; see also, <u>United States v. Johnson</u>, supra at 953; <u>Manson v. Brathwaite</u>, supra at 116.  Then, should it be determined that the proce-

---

[7](...continued)
that, whether pre- or post-Indictment, photographic displays, when conducted without the presence of the defendant, do not implicate a defendant's Sixth Amendment rights. See, <u>United States v. Ash</u>, 413 U.S. 300, 317-21 (1973).  Therefore, finding no basis for the suppression of any of the photographic identifications of Nururdin under the Sixth Amendment, we limit our analysis to the protections provided by the Due Process Clause.

dures were impermissibly suggestive, the Court must determine if the identification was, nonetheless, reliable.  See, Clark v. Caspari, 274 F.3d 507, 511 (8th Cir. 2001); Thomas v. Bowersox, 208 F.3d 699, 702 (8th Cir. 2000); United States v. Davis, 103 F.3d 660, 669 (8th Cir. 1996), cert. denied, 520 U.S. 1258 (1997) ("Reliability is the linchpin in determining the admissibility of identification testimony * * *.")[internal quotation omitted]; see also, Williams v. Lockhart, supra at 1266 (concluding that not all suggestive identification procedures violate due process).

Consequently, the identification evidence will be admissible at Trial unless the totality of circumstances demonstrates that the impermissibly suggestive procedures "created a very substantial likelihood of irreparable misidentification."  United States v. Gipson, supra at 698, citing United States v. Johnson, supra at 953; see also, Palmer v. Clarke, 408 F.3d 423, 435 (8th Cir. 2005); Clark v. Caspari, supra at 513 (Hansen, C.J., concurring), quoting Manson v. Brathwaite, supra at 116-17.  To determine reliability, five factors are to be considered:  the opportunity of the witnesses to view the defendant at the relevant time; the witnesses' degree of attention when viewing the defendant; the accuracy of the original descriptions given by the witnesses; the level of certainty in their identifications; and the passage of time between their observations

of the defendant and the photographic identifications.  See, United States v. Gipson, supra at 698; Manson v. Brathwaite, supra at 114.

2.    Legal Analysis.   We find, given the totality of the circumstances presented, that the identifications based upon the photograph presented by Wilson and Lukovsky should not be suppressed.

We begin our analysis by noting that the informants were only presented with one (1) photograph by law enforcement, upon which to identify Nururdin.  Since the informants were not provided an array of photographs, based upon the testimony of Lukovsky and Wilson, we find that the presentation of a single photograph was impermissibly suggestive.[8]  See, United States v. Williams, 340 F.3d 563, 566-67 (8th Cir. 2003); United States v. Patterson, 20 F.3d 801, 806 (8th Cir. 1994)("Single-photograph displays such as the ones employed in the present case are considered impermissibly suggestive by this court"), citing United States v. Murdock, 928 F.2d 293, 297 (8th Cir. 1991).

However, "[e]ven if a photographic identification procedure is impermissibly suggestive, * * * the 'central question' regarding eyewitness identification * * * is

_____

[8]Ordinarily, when presented with this issue, one of the interested parties will present the photograph, or the photographic array, for our independent review.  Here, they have not, and we assess the "impermissibly suggestive prong" of analysis on the basis of the Record submitted.

'whether, under the totality of the circumstances, the identification was reliable despite any suggestive or inappropriate pre-trial identification techniques." <u>Palmer v. Clarke</u>, supra at 435, quoting <u>Trevino v. Dahm</u>, 2 F.3d 829, 833 (8th Cir. 1993).

Given the testimony adduced at the Hearing, and the averments made in Lukovsky's Affidavit, we have no basis to find that the identifications of the informants were unreliable. The evidence of Record reflects that Lukovsky showed the photograph to a confidential informant directly after at least one of the controlled purchases in March of 2006, and Wilson showed the photograph to a different informant after the controlled purchase on May 11, 2006. Each of the informants professed to having an opportunity to view Nururdin, at close range, during the controlled purchases, which occurred shortly before the identifications made. Further, all of the informants immediately identified Nururdin as the person depicted in the photograph, after observing it, and there is no suggestion, in the Record, that the informants were hesitant in their identification. Given the significant, fresh exposure which the informants, as eyewitnesses, had to the Defendant as a result of their roles in the controlled purchases, we find it unlikely that the identifications made would be unreliable where, as here, the photograph was either a booking photo, or a photograph secured from the Department of Motor Vehicles.

- 26 -

We find that the circumstances here are similar to those before our Court of Appeals in <u>United States v. Puckett</u>, 147 F.3d 765 (8th Cir. 1998). In <u>Puckett</u>, the eyewitness was shown a single photograph of the defendant after a number of controlled purchases, and asked "whether the person portrayed was the individual who had conducted the sale." <u>Id.</u> Our Court of Appeals noted that the procedure "seems quite suggestive," but noted that the circumstances surrounding the identification was deemed reliable, and affirmed the Trial Court's denial of the defendant's suppression Motion. <u>Id.</u> The circumstances included corroborating identifications made by others, familiarity with the defendant, and multiple controlled purchases made from the defendant. We find those circumstances to be present here.

More over, as each informant independently identified Nururdin from the photograph, we find the likelihood of any misidentification unlikely. See, <u>United States v. Puckett</u>, supra at 769 ("testimony of other witnesses indicates that a misidentification was unlikely"); <u>United States v. Rogers</u>, 73 F.3d 774, 778 (8th Cir. 1996)(finding no due process violation in identification of a defendant as "[i]n addition to [one eyewitness's] testimony, at least two other government witnesses identified the [defendant]," and "[t]he additional testimony diminishes any likelihood

of irreparable misidentification in this case."); see also, <u>United States v. Webb</u>, 168 F.3d 496, 1999 WL 23160 at *1 (8th Cir. 1999) [Table disposition].

Here, as testified by Lukovsky, and Wilson, each informant, upon viewing the photograph, positively and confidently identified Nururdin as the person involved in the controlled purchase, even going so far as to identify Nururdin by his nicknames of "P," or "Cheeseburger."   Accordingly, because there is nothing in the Record to demonstrate that the challenged identification procedures were unreliable, we recommend that Nururdin's Motion to Suppress the photographic identifications be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That Motion of the Defendant to Suppress Evidence Obtained from Search and Seizure [Docket No. 77] be denied.

2.     That the Motion of the Defendant to Suppress Eyewitness Identification [Docket No. 79] be denied.

Dated: August 24, 2006            s/Raymond L. Erickson
                                   Raymond L. Erickson
                                   CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 11, 2006**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 11, 2006**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.